UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Master File No. |
| OMNIVISION TECHNOLOGIES, INC. | ) C-04-2297 SC |
| | ) |
| _____ | ) |
| This Document Relates To: | ) ORDER GRANTING |
| | ) PLAINTIFFS' MOTION |
| CASE NOS. 04-2297-SC, 04-2298-SC, | ) FOR FINAL APPROVAL OF |
| 04-2385-SC, 04-2410-SC, 04-2419-SC,) | SETTLEMENT AND THE |
| 04-2425-SC, 04-2433-SC, 04-2474-SC,) | PLAN OF ALLOCATION; |
| 04-2514-SC, 04-2525-SC, 04-2570-SC,) | APPROVING APPLICATION |
| and 04-4350-SC | ) FOR FEES AND EXPENSES |
| _____ | ) |

I.  **INTRODUCTION**

On May 14, 2007, the parties in this litigation stipulated to a settlement of all claims.  See Stipulation of Settlement, Docket No. 213 ("Settlement").  The parties then sought and received the Court's preliminary approval of the Settlement.  See Docket Nos. 218, 220.  Lead Plaintiffs Ken Churchill as Trustee for the Churchill Family Trust, Gerald A. Madore, Rocco Peters and Michael J. Hannan on behalf of Coyote Growth Management ("Lead Plaintiffs") now move the Court for final approval of the Settlement and Plan of Allocation.  See Docket No. 222 ("Motion for Settlement").  The Lead Plaintiffs also move the Court to approve their counsel's application for fees and reimbursement of costs.  See Docket No. 223 ("Motion for Fees").

The Court received objections to the Settlement from Patricia A. Rivera and Elvin M. Rivera ("the Riveras"), Steven P. Wierzba,

and James J. Hayes. <u>See</u> Docket Nos. 232 ("Rivera Obj."), 235 ("Wierzba Obj."), 236 ("Hayes Obj."). Defendants and Lead Plaintiffs both responded to these objections. <u>See</u> Docket Nos. 238 ("Def. Response"), 241 ("Pl. Response"). The Court held a fairness hearing on this matter on September 7, 2007, at which Mr. Wierzba addressed the Court and submitted an additional statement in support of his objections to the Settlement. <u>See</u> Docket No. 242 ("Wierzba Supp. Obj.").

Having considered all of the arguments and evidence submitted by the parties, the Court hereby GRANTS Lead Plaintiffs' Motion for Settlement and Motion for Fees.

## II.  <u>BACKGROUND</u>

Plaintiff Mitchell Vince brought this class action suit in June 2004, alleging violations of the Securities Exchange Act of 1934. <u>See</u> Compl., Docket No. 1. This suit was one of many addressing common issues of law and fact, all of which the Court consolidated in July 2004. <u>See</u> Order Consolidating and Relating Cases for Purposes of Discovery and Pre-Trial, Docket No. 9.

Generally, Plaintiffs allege that defendant OmniVisison Technologies, Inc. ("OmniVision"), and individual defendants Shaw Hong, Raymond Wu, H. Gene McCown, and John T. Rossi (collectively "Defendants") issued materially false and misleading press releases and other statements regarding OmniVision's financial results in order to artificially inflate the value of OmniVision's common stock. On the morning of June 9, 2004, Defendants announced that OmniVision would not release its financial results

2

for the 2004 fiscal year at that time and that they were considering a restatement of the company's financial results for the first three quarters of that year. See 2d Consol. Am. Compl. ("Operative Complaint"), Docket No. 131, ¶ 5. The announcement precipitated a mass sell-off of OmniVision shares, causing the price to plummet $7.84 per share from the previous day's closing price of $25.47, an overnight drop of over 30% per share. Id. ¶ 6. Plaintiffs allege that Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder, and that the individual Defendants, as the persons controlling OmniVision, violated Section 20(a) of the Securities Exchange Act. See id. ¶¶ 131-145.

On May 14, 2007, the parties executed a Stipulation of Settlement ("Settlement"). See Docket No. 213. Pursuant to the Settlement, Defendants were to pay $13,750,000 in cash into the Settlement Fund. Id. ¶ 2.1(a). The Settlement further provided that the Settlement Fund would be used to pay Lead Counsel's fees to the extent permitted by the Court, reasonable costs and expenses of the litigation, and taxes and tax-related expenses, with the balance (the "Net Settlement Fund") distributed to Class Members who submitted timely, valid proof of claim forms. Id. ¶ 5.2(a)-(d). The Net Settlement Fund was to be distributed according to the Plan of Allocation, if approved by the Court. Id. ¶ 5.2(d); see also id. Ex. A-1 at 14-16 ("Plan of Allocation").

The Class includes those who purchased or acquired shares of OmniVision common stock between June 11, 2003, and June 9, 2004

3

(the "Class Period").  The Plan of Allocation provides no recognizable claim (*i.e.*, recovery of $0.00) for shares purchased between June 11, 2003, and June 8, 2004, and sold prior to June 8, 2004.  *See* Plan of Allocation.  Similarly, shares purchased on June 9, 2004, would receive no recognizable claim.  *Id.*  For those shares purchased between June 11, 2003, and June 8, 2004, and sold on June 9, 2004, or held at the close of trading on June 9, 2004, the Plan of Allocation sets a recognizable claim as the least of (1) $7.84 per share (the decline in price per share from June 8, 2004, to June 9, 2004); (2) the purchase price of the stock (not to exceed $25.47 per share) less the sales proceeds; or (3) the purchase price of the stock less $17.63 (the closing price on June 9, 2004).  *See id.*

The Court preliminarily approved the Settlement on May 25, 2007.  Order Preliminarily Approving Settlement & Providing For Notice ("Notice Order"), Docket No. 220.  Pursuant to the Notice Order, the claims administrator, Giraldi & Co. LLC ("Administrator"), sent notice of the proposed settlement to the class members beginning on June 12, 2007.  Sylvester Aff. ¶ 3.  As of August 29, 2007, the Administrator had mailed notice to 57,630 potential class members.  Sylvester Supp. Aff. ¶ 5.  The Administrator has also posted the notice and Settlement on its website.  Sylvester Aff. ¶ 8.  Plaintiffs also published the Summary Notice in the Wall Street Journal and distributed it over the Business Wire.  *See* Andrejkovis Aff. ¶ 2, Exs. A, B.

The Administrator received four requests to be excluded from the Settlement.  Sylvester Supp. Aff. ¶ 6, Exs. A, B.

4

1   Additionally, the Court received objections to the Settlement from

2   the Riveras, Wierzba, and Hayes.  <u>See</u> Rivera Obj.; Wierzba Obj.;

3   Hayes Obj.

4        The Riveras purchased 355 shares of OmniVision stock during

5   the Class Period, but sold them prior to June 8, 2004.  Rivera

6   Obj.  The Riveras do not object to the terms of the Settlement or

7   to the requested attorney's fees; rather, they object only to the

8   Plan of Allocation.  <u>See</u> <u>id.</u>  Because the Riveras sold their

9   OmniVision stock before June 8, 2004, they will not recover

10  anything under the Plan of Allocation as it stands.

11       Hayes purchased 1000 shares of OmniVision stock on June 9,

12  2004.  Hayes Obj.  Hayes objects to the Settlement as a whole,

13  arguing that the amount Defendants must pay into the Settlement

14  Fund is inadequate, and that the Settlement is tainted by the

15  recent indictments of Plaintiffs' Lead Counsel's law firm, Milberg

16  Weiss LLP,[1] and two of its partners.  <u>See</u> <u>id.</u>  Like the Riveras,

17  Hayes will not recover anything under the Plan of Allocation.

18       Wierzba purchased 3000 shares and sold 1000 shares of

19  OmniVision common stock during the Class Period.  Wierzba Supp.

20  Obj.  Like Hayes, Wierzba objects to the involvement of Milberg

21  Weiss.  <u>Id.</u>  According to Wierzba, "This appears to be yet another

22  case constructed to benefit Milberg Weiss, and not a genuine class

23  action suit."  Wierzba Obj.  Wierzba maintains that OmniVision is

24  ─────────────

25       [1]At the outset of this litigation, Milberg Weiss LLP was known
    as Milberg Weiss Bershad & Schulman LLP, which subsequently became
26  known as Milberg Weiss & Bershad LLP, before adopting its current
    name.  For the purposes of this order, there is no need to
27  distinguish between the different entities.  For convenience, the
    Court will refer to the firm simply as "Milberg Weiss."

28                                    5

1   a profitable and innovative company and that OmniVision management

2   never misled anyone.   Wierzba Supp. Obj.

3

4   **III.  MOTION FOR SETTLEMENT**

5       **A.    Legal Standards Governing Settlement**

6           Settlement of a class action law suit requires approval of

7   the court.  See Fed. R. Civ. P. 23(e).  The court must find that

8   the proposed settlement is fundamentally fair, adequate, and

9   reasonable.  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir.

10  2003) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th

11  Cir. 1998)).  In making this determination, the court may consider

12  any or all of the following factors, if applicable:

13              the strength of plaintiffs' case; the risk,
                expense, complexity, and likely duration of
14              further litigation; the risk of maintaining
                class action status throughout the trial; the
15              amount offered in settlement; the extent of
                discovery completed, and the stage of the
16              proceedings; the experience and views of
                counsel; the presence of a governmental
17              participant; and the reaction of the class
                members to the proposed settlement.
18

19  Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th

20  Cir. 1982).  This list is not intended to be exhaustive; the court

21  must consider the applicable factors in the context of the case at

22  hand.  See id.  Where, as here, the parties agree to settle the

23  dispute prior to certification of the class, the court must be

24  particularly vigilant in its scrutiny of the settlement.  Hanlon,

25  150 F.3d at 1026.

26          Despite the importance of fairness, the court must also be

27  mindful of the Ninth Circuit's policy favoring settlement,

28                                   6

particularly in class action law suits. See, e.g., Officers for Justice, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . . .").

While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Id. The court, in evaluating the agreement of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. See id.

**B.   The Risk of Continued Litigation**

The first relevant factor in the present matter is the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement. See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.), 213 F.3d 454, 458 (9th Cir. 2000). Although Plaintiffs' case has survived two motions to dismiss, see Docket Nos. 128, 142, it still faces numerous hurdles. For example, when the parties entered serious settlement discussions, Plaintiffs' Motion for Class Certification was still pending before the Court, and has been taken off calendar because of the Settlement. See Docket Nos. 179, 206. Defendants opposed class certification. See Docket No. 190. That motion may be outcome-determinative in itself. If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. Even if the Court were to

certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.

Setting aside certification, Plaintiffs still faced a number of problems in actually proving their case on the merits. The Securities and Exchange Commission has already investigated Defendants' restatement of OmniVision's earnings and decided not to take further action, suggesting some weaknesses on the merits. See Westerman Decl. ¶¶ 83, 85. Lead Counsel believes that if the case were to proceed, Defendants would likely move for summary judgment on the issues of scienter, loss causation, and damages. See id. ¶¶ 77, 84. Prior to settlement negotiations, Plaintiffs sought the Court's assistance in collecting evidence from third-parties in Hong Kong, pursuant to the Hague Convention, which Defendants also opposed. See Docket Nos. 192, 201. It is therefore unclear whether Plaintiffs would even be able to secure the evidence they believe supports the case. Finally, merely reaching trial is no guarantee of recovery.

The amount Plaintiffs might recover if they prevailed at trial is uncertain. A number of factors, including general market conditions and the non-misleading forecasts in the June 9 statement, may have affected the portion of the damages attributable to Defendants' purportedly misleading statements. If the case goes to trial, Plaintiffs' attorneys' fees and costs would increase steadily, cutting further into any award they might receive. Litigation is also time-consuming; if Defendants were to appeal a jury verdict in favor of Plaintiffs, it could be years

8

before Plaintiffs see a dollar.

Against all of this, the Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option. As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed. This factor therefore favors approval of the Settlement.

**C.    Amount of Settlement**

Under the circumstances, the Court finds that the amount of the Settlement is reasonable. Plaintiffs' damages expert estimated damages totaling approximately $151.8 million. Westerman Decl. ¶ 84. Defendants estimate that the total damages if Plaintiffs prevailed on all claims would be between $15.1 million and $18.6 million. Def. Response, at 2. The Settlement will give Plaintiffs $13.75 million, which is just over 9% of the maximum potential recovery asserted by either party. After accounting for attorneys' fees and costs, the Settlement will give Plaintiffs a certain recovery in excess of 6% of the potential. This is higher than the median percentage of investor losses recovered in recent shareholder class action settlements. See *In re* Heritage Bond Litig., No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *27-28 (C.D. Cal. June 10, 2005) (median amount recovered in settlement was 2.7% in 2002, 2.8% in 2003, 2.3% in 2004, 3% in 2005, and 2.2% in 2006).

While this percentage may seem small compared to the potential maximum, that alone is not sufficient reason to reject

the Settlement.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  <u>Officers for Justice</u>, 688 F.2d at 628.  Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing.  The Court finds the amount agreed upon by the parties reasonable.  This factor therefore weighs in favor of approval of the Settlement.

**D.   <u>Extent of Discovery</u>**

The extent of the discovery conducted to date and the stage of the litigation are both indicators of Lead Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions.  <u>See</u>, <u>e.g.</u>, <u>Dunleavy</u>, 213 F.3d at 459.  To date, Lead Counsel has taken or defended eleven depositions and noticed eight more.  Westerman Decl. ¶¶ 53-55. Lead Counsel has also issued approximately fifty subpoenas requesting documents from third parties, has propounded numerous document requests to Defendants, and has engaged in substantive review of the tens of thousands of documents received.  <u>Id.</u> ¶¶ 39-46.  In addition to discovery, Lead Counsel has briefed numerous substantive motions and prepared for and participated in a successful mediation.  <u>See</u> <u>id.</u> ¶¶ 30-32, 35-37, 47-52, 56-58.  The Court is confident that Lead Counsel in this matter is thoroughly familiar with the facts of this case and was therefore able to help Plaintiffs make an informed decision regarding the merits of the Settlement.

///

### E. **Experience of Counsel**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." <u>Boyd v. Bechtel Corp.</u>, 485 F. Supp. 610, 622 (N.D. Cal. 1979). In addition to being familiar with the present dispute, Lead Counsel has significant expertise in securities litigation.[2] <u>See</u> <u>id.</u> ¶ 107. There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable. Therefore, the recommendation of counsel also weighs in favor of approving the Settlement.

### F. **Reaction of the Class**

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, Case No. CV 99-5666 LGB, 2004 U.S. Dist. LEXIS 11458, at *17 (C.D. Cal. Jan. 5, 2004). After receiving notice of the proposed settlement, the Class in this suit has been nearly silent. The Court received objections from only 3 out of 57,630 potential Class Members who received the notice.[3] By any

---

[2]The relevance of recent indictments against Milberg Weiss is discussed below.

[3]In responding to the three objections, Plaintiffs also address a press release issued by Theodore Bechtold, another securities lawyer. <u>See</u> Pl. Response at 9-16. Bechtold has not filed an objection or appeared in this matter on his own behalf or on behalf of other Class Members. That he communicated with class members based on a grudge he allegedly has against Milberg Weiss is of no concern to the Court, as Plaintiffs do not identify any tangible negative effect resulting from the press release. The Court bases its decision on the arguments and evidence on the record, and will not comment further on what Plaintiffs have accurately termed a "sideshow."

11

1  standard, the lack of objection of the Class Members favors

2  approval of the Settlement.  See, e.g., Churchill Village LLC v.

3  Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (affirming

4  settlement with 45 objections out of 90,000 notices sent);

5  Rodriquez v. West Publ. Corp., Case No. CV05-3222 R, 2007 U.S.

6  Dist. LEXIS 74767, at *33 (C.D. Cal. Sept. 10, 2007) (54

7  objections out of 376,000 notices).

8       The Court now turns its attention to the specific objections

9  presented in this case.

10            1.   The Rivera Objection

11       Simply put, there is no basis for the Riveras to recover

12  damages.  They bought and sold all of their OmniVision shares

13  during the Class Period and held none at the time of the

14  purportedly corrective disclosure.  See Rivera Obj.  Where an

15  investor sells his shares "before the relevant truth begins to

16  leak out, the misrepresentation will not have led to any loss."

17  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005); see also In

18  re Cornerstone Propane Partners, L.P. Sec. Litig., No. C 03-2522

19  MHP, 2006 U.S. Dist. LEXIS 25819, at *27-28 (N.D. Cal. May 3,

20  2006) (plaintiffs who bought and sold stock before corrective

21  disclosure cannot prove loss causation and therefore are not

22  entitled to recover).  The Riveras claim that OmniVision's

23  financial difficulties were apparent prior to the June 9, 2004,

24  disclosure, and argue that the Settlement penalizes those

25  investors who were proactive and sold prior to that date to

26  protect their investments.  However, the Operative Complaint

27  contains no allegations that any information regarding

28                          12

OmniVision's true financial situation came out prior to the June 9

corrective statement. See Operative Compl. ¶¶ 55-59. As such,

Plaintiffs – including the Riveras – cannot recover for any change

in price prior to June 9, 2004. See Sparling v. Daou (In re Daou

Sys., Inc. Sec. Litig.), 411 F.3d 1006, 1026-27 (9th Cir. 2005),

cert. denied, 126 S. Ct. 1335 (2006) (decline in stock price

cannot be causally related to fraudulent accounting practices

where price dropped before alleged revelation of fraud).

### 2. The Hayes Objection

Hayes purchased OmniVision stock after the June 9, 2004,

corrective disclosure. As such, he cannot have reasonably relied

on OmniVision's alleged prior misrepresentations about the

company's financials. What's more, Hayes purchased the OmniVision

shares after the stock price dropped, so he did not suffer any

injury as a result of the alleged prior representation. Because

Defendants did not cause any injury to Hayes, Hayes lacks standing

to object to the Settlement, regardless of his membership in the

Class.[4] See Wolford v. Gaekle (In re First Capital Holdings Corp.

---

[4]Even if Hayes had standing, his objections lack merit. Hayes objects first to the involvement of Milberg Weiss in the Settlement negotiation. The Court addresses this issue below, in the context of the Wierzba Objection. Hayes also objects to the Settlement amount, arguing without support that it should be a minimum of $98 million, and as much as $196 million. Even with these figures, the Settlement would represent a recovery of 4.3%, which the Court would still find adequate for the reasons outlined above.

Hayes claims that Plaintiffs withheld information necessary to make a competent evaluation of the Settlement, but provides no basis for this allegation. The parties did not agree about the total amount of damages at stake, and Plaintiffs were therefore not bound to disclose that sum. See 15 U.S.C. § 78u-4(a)(7)(B)(i) ("If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title," the disclosure of proposed

1   <u>Fin. Prods. Sec. Litig.)</u>, 33 F.3d 29, 30 (9th. Cir. 1994) ("Simply

2   being a member of a class is not enough to establish standing. One

3   must be an aggrieved class member.").

4           3.   <u>The Wierzba Objection</u>

5       Mr. Wierzba is a Class Member and is eligible to recover

6   under the Plan of Allocation. His objection is not that the

7   Settlement provides too small a recovery to Plaintiffs but that it

8   provides a recovery at all. <u>See</u> Wierzba Obj. Wierzba believes

9   that OmniVision is a healthy and innovative company, that its

10  leadership did not mislead anyone, and that the entire lawsuit was

11  constructed for the benefit of Milberg Weiss rather than the

12  benefit of the Class. <u>See</u> <u>id.</u>; Wierzba Supp. Obj.

13      Essentially, Wierzba alleges a conspiracy involving hedge

14  funds, financial analysts, and Milberg Weiss attorneys to attack

15  OmniVision and create fear among investors, and then to profit

16  from that fear. <u>See</u> Wierzba Supp. Obj. at 2-4. It is unfortunate

17  that recent indictments against Milberg Weiss and its attorneys

18  make these allegations appear less fanciful than they might have

19  appeared a few years ago. They are fanciful nonetheless.

20      Wierzba offers no evidence to support his allegations, and

21  nothing to connect Milberg Weiss's purported wrongdoings in other

22

23  settlement to all class members shall include "a statement
    concerning the average amount of such potential damages per
24  share.").
        Hayes believes the Class should proceed with the litigation to
25  have a chance of winning the "lottery" in the form of a full
    recovery. It is easy for Hayes to discount the value of a certain
26  and immediate recovery given that he has not actually suffered any
    injury. The Class has already chosen, reasonably, to reject that
27  gamble.

28                              14

actions to this case. For example, Wierzba notes that Milberg

Weiss has filed numerous lawsuits on behalf of the same client,

Seymour Lazar. Id. at 3. Despite Wierzba's assertion that

Milberg Weiss brought this suit "with Mr. Lazar, family and

friends as lead plaintiffs," see Wierzba Obj., Lazar is not a

party to this suit, nor is there evidence of a connection between

him and any of the actual plaintiffs. Milberg Weiss is Lead

Counsel, but this suit was consolidated from actions brought by

many different plaintiffs with many different attorneys, many of

whom sought to be designated as lead plaintiffs and lead counsel.

It is therefore difficult to see how the lawsuit as a whole can be

attributed to a Milberg Weiss conspiracy. Neither this lawsuit

nor the parties involved in it were mentioned in the indictments

against Milberg Weiss. Pl. Response at 5; see Lin Decl., Exs. D

(Indictment against Milberg Weiss Bershad & Schulman LLP), E

(Statement of David Bershad). The primary Milberg Weiss attorneys

working on this matter have not been implicated in any wrongdoing.

Pl. Response at 5.

While the integrity of counsel is critical to the integrity

of the Settlement, there is no evidence of wrongdoing by counsel,

and therefore no basis for rejecting the Settlement. The prior

actions of Milberg Weiss and certain of its attorneys, in and of

themselves, are not sufficient basis to tar every client the firm

has represented. The Court is satisfied that Lead Counsel and

Lead Plaintiffs in this matter have fairly represented the

interests of the Class. There is no evidence to the contrary.

///

15

1

### G. **Plan of Allocation**

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re* Oracle Sec. Litig., No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994) (citing <u>Class Pls. v City of Seattle</u>, 955 F.2d 1268, 1284-85 (9th Cir 1992)). It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits. <u>See</u> <u>id.</u> at *3-4 (citing *In re* Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D., 588, 596 (S.D.N.Y. 1992)).

The Plan of Allocation proposed here meets these criteria. The Class contains anyone who bought shares of OmniVision common stock during the Class Period. The Plan of Allocation divides the shares held by Class Members into three distinct groups: (1) shares sold prior to the corrective disclosure on June 9, 2004; (2) shares purchased before June 9, 2004, and sold on or after that date; and (3) shares purchased on June 9, 2004 (the last day of the Class Period). <u>See</u> Plan of Allocation. The Plan of Allocation sets the "Recognized Claim" for the shares in the first and third groups to $0.00 per share. <u>See</u> <u>id.</u> The owners of the first group of shares suffered no injury because they sold before Defendants issued the corrective statement that Plaintiffs allege precipitated the 30% price drop. <u>See</u> <u>Dura Pharm.</u>, 544 U.S. at 342. The Riveras fall into this category. <u>See</u> Section III(F)(1), <u>supra</u>. The owners of the shares in the third group purchased

16

their stock after the corrective disclosure and therefore cannot have reasonably relied on Defendants' alleged misrepresentations to their detriment. Hayes falls into this category. <u>See</u> Section III(F)(2), <u>supra</u>.

The Plan of Allocation appropriately disburses the Net Settlement Fund to Class Members who owned shares in the second group – the only Class Members to suffer any injury. Because the disbursement is allocated on a per-share basis, each Class Member will receive a portion of the Net Settlement Fund proportional to the number of shares owned in the second group, and therefore proportional to actual injury.

**IV.    MOTION FOR FEES**

    **A.    Legal Standards Governing Attorneys' Fees**

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." <u>Vincent v. Hughes Air W., Inc.</u>, 557 F.2d 759, 769 (9th Cir. 1977). This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. <u>See Paul, Johnson, Alston, & Hunt v. Graulty</u>, 886 F.2d 268, 271 (9th Cir. 1989) ("<u>Paul, Johnson</u>").

In the Ninth Circuit, district courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly

17

billing) or the percentage method proposed here.  <u>Chem. Bank v.</u>
<u>City of Seattle</u> (<u>*In re* Wash. Pub. Power Supply Sys. Sec. Litiq.</u>),
19 F.3d 1291, 1296 (9th Cir. 1994).  Despite this discretion, use
of the percentage method in common fund cases appears to be
dominant.  <u>See</u>, <u>e.q.</u>, <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043,
1047 (9th Cir. 2002); <u>Six Mexican Workers v. Ariz. Citrus Growers</u>,
904 F.2d 1301, 1311 (9th Cir. 1990); <u>Paul, Johnson</u>, 886 F.2d at
272.  The advantages of using the percentage method have been
described thoroughly by other courts.  <u>See</u>, <u>e.q.</u>, <u>*In re* Activision</u>
<u>Sec. Litiq.</u>, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989)
(collecting authority and describing benefits of the percentage
method over the lodestar method).  The Court finds those
advantages persuasive, and adopts the percentage method in this
matter.

The ultimate goal under either method of determining fees is
to reasonably compensate counsel for their efforts in creating the
common fund.  <u>See Paul, Johnson</u>, 886 F.2d at 271-72.  It is not
sufficient to arbitrarily apply a percentage; rather the district
court must show why that percentage and the ultimate award are
appropriate based on the facts of the case.  <u>Vizcaino</u>, 290 F.3d at
1048.  The Ninth Circuit has approved a number of factors which
may be relevant to the district court's determination: (1) the
results achieved; (2) the risk of litigation; (3) the skill
required and the quality of work; (4) the contingent nature of the
fee and the financial burden carried by the plaintiffs; and (5)
awards made in similar cases.  <u>See</u> <u>id.</u> at 1048-50.  It is no
surprise that these factors are similar to those used in

1  evaluating the adequacy of a settlement.

2  **B.   Results Achieved**

3      The overall result and benefit to the class from the

4  litigation is the most critical factor in granting a fee award.

5  Heritage Bond, 2005 U.S. Dist. LEXIS 13627, at *27.  As previously

6  discussed, the Settlement creates a total award of approximately

7  9% of the possible damages, which is more than triple the average

8  recovery in securities class action settlements.  Id. at *27-28;

9  see also Section III(C), supra; Westerman Decl. ¶ 84.  This is a

10  substantial achievement on behalf of the class, and weighs in

11  favor of granting the requested 28% fee.

12  **C.   Risk of Litigation**

13      The risk that further litigation might result in Plaintiffs

14  not recovering at all, particularly a case involving complicated

15  legal issues, is a significant factor in the award of fees.  See

16  Vizcaino, 290 F.3d at 1038.  Plaintiffs did not face an easy path

17  if they continued to trial.  Although they had survived two

18  motions to dismiss, the Court had not yet certified the class, and

19  Defendants were likely to move for summary judgment on the issues

20  of loss causation and scienter.  See id. ¶¶ 77, 84.  The parties'

21  estimates of possible damages varied dramatically, such that if

22  Plaintiffs prevailed on liability but Defendants prevailed on

23  damages, the reward could have been even smaller.  Even if they

24  proceeded to trial before a jury, the outcome remained uncertain.

25  In the last five years, only two securities class action lawsuits

26  in this district have resulted in verdicts, both of which were for

27  defendants.  See Dan Levine, JDS Uniphase Scores a Win in

28

19

1   <u>Securities Case</u>, THE RECORDER, November 28, 2007.[5]  Nationwide,

2   Plaintiffs have won only three of eleven such cases to reach

3   verdicts since 1996.  <u>Id.</u>  The risk that Plaintiffs would have

4   recovered less, if anything, also supports granting the requested

5   fee.

6       **D.   Skill of Counsel**

7       The "prosecution and management of a complex national class

8   action requires unique legal skills and abilities."  <u>Edmonds v.</u>

9   <u>United States</u>, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  This is

10  particularly true in securities cases because the Private

11  Securities Litigation Reform Act makes it much more difficult for

12  securities plaintiffs to get past a motion to dismiss.  <u>See</u>, <u>e.g.</u>,

13  <u>In re Ikon Office Solutions, Inc.</u>, 194 F.R.D. 166, 181, 194 (E.D.

14  Pa. 2000).  That Plaintiffs' case withstood two such motions,

15  despite other weaknesses, is some testament to Lead Counsel's

16  skill.  This factor also supports the requested fee.

17      **E.   Contingent Nature of the Fee**

18      The importance of assuring adequate representation for

19  plaintiffs who could not otherwise afford competent attorneys

20  justifies providing those attorneys who do accept matters on a

21  contingent-fee basis a larger fee than if they were billing by the

22  hour or on a flat fee.  <u>See</u> <u>Chem. Bank</u>, 19 F.3d at 1299-1300;

23  <u>Vizcaino</u>, 290 F.3d at 1050.  This suit began over three years ago.

24  During that time, the various attorneys representing Plaintiffs

25  have spent over 7500 hours litigating this case, without receiving

26  _____

27      [5]Online: http://www.law.com/jsp/article.jsp?id=1196181563591

28                              20

**United States District Court**
For the Northern District of California

any compensation. <u>See</u> Williams Decl., Kahn Decl., Weiss Decl., De Bartolomeo Decl., Piven Decl., McKenna Decl., and Gregorek Decl. (Compendium of Declarations in Support of Application for Attorneys' Fees and Reimbursement of Expenses ("Fees Compendium"), Docket No. 228). Counsel also advanced over $560,000 in expenses related to prosecuting this action. Westerman Decl. ¶ 98. This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees.

**F.   <u>Awards in Similar Cases</u>**

The percentage of the Settlement Fund that Lead Counsel seeks is slightly in excess of the benchmark of 25% established by the Ninth Circuit. <u>See</u>, <u>e.g.</u>, <u>Powers v. Eichen</u>, 229 F.3d 1249, 1256 (9th Cir. 2000). However, in most common fund cases, the award exceeds that benchmark. <u>Activision</u>, 723 F. Supp. at 1377-78 (surveying securities cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all common fund awards range around 30%. . . ."); <u>see</u> <u>also</u> <u>Ikon Office Solutions</u>, 194 F.R.D. at 194 ("The median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions."). The <u>Activision</u> court concluded that, where a court adopts the percentage method, "absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%." 723 F. Supp. at 1378. Plaintiffs provide substantial authority reflecting the same trend. Mot. for Fees at 12-13. The awards in other similar cases therefore support an award of 28% of the Settlement Fund.

1

**G.** **Reaction of the Class**

2      The reaction of the class may also be a determining factor in

3 the determining the fee award.  <u>Heritage Bond</u>, 2005 U.S. Dist.

4 LEXIS 13627, at *48.  In response to the 57,630 copies of the

5 Notice sent out to potential class members, the Court received

6 only three objections and four requests to opt-out.  The Notice

7 explicitly stated that Lead Counsel would file the instant Motion

8 for Fees and seek 28% of the Settlement Fund, plus reimbursement

9 for expenses.  None of the objectors raised any concern about the

10 amount of the fee.  This factor, like those above, also supports

11 the requested award of 28% of the Settlement Fund.

12     **H.** **Lodestar Comparison**

13     As a final check on the reasonableness of the requested fees,

14 courts often compare the fee counsel seeks as a percentage with

15 what their hourly bills would amount to under the lodestar

16 analysis.  <u>See</u>, <u>e.g.</u>, <u>Vizcaino</u>, 290 F.3d at 1050-51 ("Calculation

17 of the lodestar, which measures the lawyers' investment of time in

18 the litigation, provides a check on the reasonableness of the

19 percentage award.").

20     Plaintiffs' attorneys spent a total of 7,619.49 hours on this

21 case, which, at their hourly rates, results in a total lodestar of

22 approximately $2,901,492.15.  <u>See</u> Westerman Decl. ¶ 97; Fees

23 Compendium.  The requested 28% fee would amount to $3,850,000.00.

24 This represents a multiplier of approximately 1.33 times the

25 lodestar.  In similar cases, courts have approved multipliers

26 ranging between 1 and 4.  <u>See</u> <u>In re</u> <u>Chiron Corp. Secs. Litig.</u>, No.

27 C-04-4293 VRW, Docket No. 130, at 17-18 (N.D. Cal. Nov. 30, 2007)

28

1  (surveying fee awards in class action suits and rejecting a

2  multiplier of 8.34).

3      Comparison with the lodestar demonstrates that the requested

4  28% fee award is reasonable, and further supports the Court's

5  decision to approve the fee application.

6      **I.**     **Reimbursement of Counsel's Expenses**

7      The Motion for Fees also seeks to recover from the Settlement

8  Fund $560,489.90, plus interest, spent by all of Plaintiffs'

9  attorneys in prosecuting this action to date.  Attorneys may

10  recover their reasonable expenses that would typically be billed

11  to paying clients in non-contingency matters.  See <u>Harris v.</u>

12  <u>Marhoefer</u>, 24 F.3d 16, 19 (9th Cir. 1994).

13      Plaintiffs' Counsel's expenses are documented in great detail

14  in the declarations from counsel at each of the law firms which

15  represented Plaintiffs in this suit.  <u>See</u> Fees Compendium.  The

16  expenses relate to photocopying, printing, postage and messenger

17  services, court costs, legal research on Lexis and Westlaw,

18  experts and consultants, and the costs of travel for various

19  attorneys and their staff throughout the case.  <u>See</u> <u>id.</u>; Mot. for

20  Fees at 16.  Attorneys routinely bill clients for all of these

21  expenses, and it is therefore appropriate for counsel here to

22  recover these costs from the Settlement Fund.

23      **J.**     **Reimbursement of Lead Plaintiffs' Time and Expenses**

24      Finally, the Lead Plaintiffs seek to recover $29,913.80 from

25  the Settlement Fund for reimbursement of their costs and expenses

26  (including lost wages) relating to their representation of the

27  Class.  Mot. for Fees at 18.  Throughout this litigation, the Lead

28

Plaintiffs have helped form the strategy for the suit, reviewed pleadings and motions, assisted with preparation for depositions and the mediation, and consulted with counsel throughout the negotiation of the Settlement. <u>See</u> Madore Decl., Hannan Decl., Peters Decl., Churchill Decl. The Notice adequately informed all potential Class Members that the Lead Plaintiffs would seek to recover these costs, and no one objected. It is therefore appropriate to reimburse Lead Plaintiffs for their reasonable costs and expenses.

**V.    <u>CONCLUSION</u>**

For the reasons outlined above, the Court GRANTS Plaintiffs' Motion for Settlement and GRANTS Plaintiffs' Motion for Fees, and ORDERS as follows:

1.    The Court hereby APPROVES the Settlement and Plan of Allocation.

2.    The Court AWARDS Plaintiffs' Counsel attorneys' fees in the amount of 28% of the Gross Settlement Fund.

3.    The Court AWARDS Plaintiffs' Counsel reimbursement of litigation expenses in the amount of $560,489.90 from the Gross Settlement Fund, with interest on such expenses from the date the Settlement Fund was funded to the date of payment, at the same net rate the Settlement Fund earns.

4.    The Court AWARDS Lead Plaintiffs $29,913.80 from the Gross Settlement Fund for reimbursement of their reasonable costs and expenses relating to their

representation of the Class.  Awards to individual Lead
Plaintiffs shall be in the amounts specified in the
Madore, Hannan, Peters, and Churchill Declarations.

IT IS SO ORDERED.

Dated: December 6, 2007

UNITED STATES DISTRICT JUDGE